**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELLIOT SOMMER, Individually and On Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| COMSCORE, INC., SERGE MATTA, and MELVIN WESLEY III, | |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Elliot Sommer ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by comScore, Inc. ("comScore" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by comScore; and (c) review of other publicly available information concerning comScore.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons or entities that acquired comScore securities between May 5, 2015 and March 7, 2016, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      comScore provides data, metrics, products, and services to clients in the media, advertising, and marketing industries.  The Company delivers digital media analytics that help content owners and advertisers understand and value the composition of consumer media audiences, and help marketers understand the performance and effectiveness of advertising targeted at these audiences.  The Company's technology measures consumer interactions with digital media, including Web sites, apps, video programming, and advertising.

3.      On February 29, 2016, the Company filed a Notification of Late Filing on Form 12b-25 with the SEC, disclosing that the Company would be unable to file its Annual Report on Form 10-K for the fiscal year ended December 31, 2015 on time because the Company "require[d] additional time to prepare its financial statements and complete the external audit of those statements included in the Form 10-K."  Elaborating, the Company disclosed that on

February 19, 2016, "the Audit Committee of the Company's Board of Directors (the "Audit Committee") received a message regarding certain potential accounting matters" and that, in response, "the Audit Committee immediately commenced a review of the matters with the assistance of independent counsel and advisors."  comScore also announced that the Company would not file its Form 10-K until after the completion of the Audit Committee's review, and that comScore expected to file the 10-K by March 15, 2016.

4.      On this news, shares of comScore fell $1.15 per share, or 2.8%, to close at $40.00 on March 1, 2016, on unusually heavy trading volume.

5.      On March 7, 2016, the Company filed an amendment to the Notice of Late Filing previously filed on February 29, 2016.  Therein, the Company disclosed that on March 5, 2016, the Audit Committee advised the Company's Board of Directors that it did not expect to finalize its review before March 15, 2016.  The Company also disclosed that, as a result, "the Company is not in a position to file its Form 10-K until after the Audit Committee completes its review and the Company's independent public accountants assess the conclusions of the Audit Committee in connection with their audit of the Company's annual financial statements included in the Form 10-K."  The Company also stated that it does not expect to make further comment regarding the Audit Committee's review until its conclusion.  Finally, in a press release issued the same day, the Company announced that "out of an abundance of caution" it was suspending the Company's previously announced share repurchase program."

6.      On this news, shares of comScore fell $13.67 per share, or 33.5%, to close at $27.04 on March 7, 2016, on unusually heavy trading volume.

7.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business,

operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company's accounting practices were not in compliance with applicable SEC regulations; (2) that the Company lacked adequate internal controls over accounting; (3) that, as such, the Company would be unable to file its Form 10-K for the fiscal year ended December 31, 2015 in a timely manner; and (4) that, as a result of the foregoing, the Company's financial statements, as well as Defendants' statements about comScore's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's shares are actively traded within this Judicial District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants

directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

13.    Plaintiff Elliot Sommer, as set forth in the accompanying certification, incorporated by reference herein, acquired comScore common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.    Defendant comScore is a Delaware corporation with its principal executive offices located at 11950 Democracy Drive, Suite 600, Reston, Virginia 20190.

15.    Defendant Serge Matta ("Matta") was, at all relevant times, Chief Executive Officer ("CEO") of comScore.

16.    Defendant Melvin Wesley III ("Wesley") was, at all relevant times, Chief Financial Officer ("CFO") of comScore.

17.    Defendants Matta and Wesley are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of comScore's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been

disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     comScore provides data, metrics, products, and services to clients in the media, advertising, and marketing industries.   The Company delivers digital media analytics that help content owners and advertisers understand and value the composition of consumer media audiences, and help marketers understand the performance and effectiveness of advertising targeted at these audiences.   The Company's technology measures consumer interactions with digital media, including Web sites, apps, video programming, and advertising.

### Materially False and Misleading
### Statements Issued During the Class Period

19.     The Class Period began on May 5, 2015.   On that day, comScore issued a press release entitled, "comScore, Inc. Reports First Quarter 2015 Results."   Therein, the Company, in relevant part, stated:

> **RESTON, VA - May 5, 2015** - comScore, Inc. (NASDAQ: SCOR), a leader in measuring the digital world, today announced financial results for the first quarter 2015.
>
> **First Quarter 2015**
>
> comScore achieved record first quarter revenue of $87.3 million, an increase of 14% compared to the first quarter of 2014. GAAP loss before income taxes was $9.7 million. GAAP net loss was $7.3 million, or $0.22 per basic and diluted share.
>
> First quarter 2015 results and metrics compared to first quarter 2014 on a proforma basis* were as follows:

- Revenue of $87.1 million, up 15% from a year ago.

- Adjusted EBITDA of $21.3 million, up 25% from a year ago.

- Adjusted EBITDA margin was 24% of revenue, up 200 basis points from a year ago.

"I'm pleased that comScore delivered another quarter of strong revenues and financial performance," said Serge Matta, Chief Executive Officer of comScore. "Immediately following the end of the first quarter on April 1, we closed the WPP transaction that we announced on our last earnings call. I am also happy to announce that our board of directors recently authorized the increase of our share buy-back program to $150 million, demonstrating our continued commitment to return capital to our investors."

"As a company, we continue to pursue our mission of making audiences and advertising more valuable, and are doing so during a time of rapid change in the digital media, television and advertising ecosystems," continued Matta. "Today, one of the toughest challenges for our industry is understanding how, when and where consumers engage with video content across screens. We are solving this challenge. Cross-media is no longer an aspiration at comScore - we are increasingly making it a reality. We will be formally launching our first syndicated Xmedia product later this quarter."

20.     On the same day, May 5, 2015, comScore filed its Quarterly Report with the SEC on Form 10-Q for the 2015 fiscal first quarter.  The Company's Form 10-Q was signed by Defendant Wesley, and reaffirmed the Company's statements previously announced earlier that day.  The Form 10-Q contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), signed by Defendants Matta and Wesley, who certified the following:

1. I have reviewed this quarterly report on Form 10-Q of comScore, Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

> (a) designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

> (b) designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

> (c) evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

> (d) disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

> (a) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

> (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

21.     On August 4, 2015 comScore issued a press release entitled, "comScore, Inc.

Reports Second Quarter 2015 Results."  Therein, the Company, in relevant part, stated:

> **RESTON, VA - August 4, 2015** - <u>comScore, Inc</u>. (NASDAQ: SCOR), a global
> media measurement and analytics company, today announced financial results for
> the second quarter 2015.
>
> **Second Quarter 2015**
>
> comScore achieved record second quarter GAAP revenue of $91.4 million, an
> increase of 14% compared to the second quarter of 2014. GAAP loss before
> income taxes was $2.7 million. GAAP net loss was $4.8 million, or $0.12 per
> basic and diluted share.
>
> Second quarter 2015 results and metrics compared to second quarter 2014 on a
> proforma basis* were as follows:
>
> - Revenue of $91.3 million, up 16%.
>
> - Adjusted EBITDA of $22.9 million, up 30%.
>
> - Adjusted EBITDA margin was 25% of revenue, up 300 basis points.
>
> Year to date 2015 results and metrics compared to the six months ended June
> 30, 2014 on a proforma basis* were as follows:
>
> - Revenue of $178.3 million, up 15%.
>
> - Adjusted EBITDA of $44.2 million, up 28%.
>
> - Adjusted EBITDA margin was 25% of revenue, up 300 basis points.
>
> "I'm pleased to share that comScore delivered a quarter of record revenues and
> strong profitability," said Serge Matta, President and Chief Executive Officer of
> comScore. "Because of our continued positive momentum across our business
> and the strength of our partnerships, which continue to grow in number and
> impact, we are raising full year revenue and adjusted EBITDA guidance. I'm also
> delighted that comScore vCE in DoubleClick is now widely available to Google
> DoubleClick customers. comScore vCE is the first independent audience delivery
> evaluation solution that is integrated directly into the DoubleClick platform."
>
> "Beyond our work with Google and our innovation in advertising measurement,
> we continue to focus on solving the challenges that come with the rapid rise of
> cross-platform television and video audiences. In May, we launched our
> syndicated cross-media product, comScore XMedia. At comScore, cross-media
> measurement is no longer an aspiration."

22.     On August 7, 2015, comScore filed its Quarterly Report with the SEC on Form 10-Q for the 2015 fiscal second quarter.  The Company's Form 10-Q was signed by Defendant Wesley, and reaffirmed the Company's statements previously announced on August 4, 2015. The Form 10-Q contained certifications pursuant to SOX, signed by Defendants Matta and Wesley, substantially similar to the certification described in ¶20, *supra*.

23.     On November 5, 2015 comScore issued a press release entitled, "comScore, Inc. Reports Third Quarter 2015 Results."  Therein, the Company, in relevant part, stated:

> **RESTON, VA - November 5, 2015** - comScore, Inc. (NASDAQ: SCOR), a global media measurement and analytics company, today announced financial results for the third quarter 2015.
>
> **Third Quarter 2015**
>
> comScore achieved record third quarter GAAP revenue of $92.4 million, an increase of 13% compared to the third quarter of 2014. GAAP income before income taxes was $0.9 million. GAAP net income was $1.0 million, or $0.02 per basic and diluted share.
>
> Third quarter 2015 results and metrics compared to third quarter 2014 on a proforma basis* were as follows:
>
> - Revenue of $92.4 million, up 14%.
>
> - Adjusted EBITDA of $23.4 million, up 16%.
>
> - Adjusted EBITDA margin was 25% of revenue, up 50 basis points.
>
> Year to date 2015 results and metrics compared to the nine months ended September 30, 2014 on a proforma basis* were as follows:
>
> - Revenue of $270.7 million, up 15%.
>
> - Adjusted EBITDA of $67.6 million, up 23%.
>
> - Adjusted EBITDA margin was 25% of revenue, up 200 basis points.
>
> "I'm very pleased to announce that comScore delivered a solid quarter of record revenues, strong profitability and net income from operations." said Serge Matta,

President and Chief Executive Officer of comScore. "We continue to see momentum in our advertising solutions, including vCE and new partnerships to bring comScore Bid Ratings to programmatic platforms. We're incredibly focused on innovation and execution for cross-platform measurement, introducing our new Total Home Panel$^{TM}$, and working through the details of our planned merger with Rentrak."

"In addition, we are announcing today that Adobe is acquiring our enterprise analytics technology, Digital Analytix. This divesture improves our competitive position, allowing complete focus on our mission to make audiences and advertising more valuable across all the screens that matter."

24.    On November 6, 2015, comScore filed its Quarterly Report with the SEC on Form 10-Q for the 2015 fiscal third quarter.  The Company's Form 10-Q was signed by Defendant Wesley, and reaffirmed the Company's statements previously announced on November 5, 2015.  The Form 10-Q contained certifications pursuant to SOX, signed by Defendants Matta and Wesley, substantially similar to the certification described in ¶20, *supra*.

25.    The above statements contained in ¶¶ 19–24 were false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose: (1) that the Company's accounting practices were not in compliance with applicable SEC regulations; (2) that the Company lacked adequate internal controls over accounting; (3) that, as such, the Company would be unable to file its Form 10-K for the fiscal year ended December 31, 2015 in a timely manner; and (4) that, as a result of the foregoing, the Company's financial statements, as well as Defendants' statements about comScore's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

26.    On February 29, 2016, the Company filed a Notification of Late Filing on Form 12b-25 with the SEC, disclosing that the Company would be unable to file its Annual Report on

Form 10-K for the fiscal year ended December 31, 2015 on time because the Company "require[d] additional time to prepare its financial statements and complete the external audit of those statements included in the Form 10-K."  Elaborating, the Company disclosed that on February 19, 2016, "the Audit Committee of the Company's Board of Directors (the "Audit Committee") received a message regarding certain potential accounting matters" and that, in response, "the Audit Committee immediately commenced a review of the matters with the assistance of independent counsel and advisors."  comScore also announced that the Company would not file its Form 10-K until after the completion of the Audit Committee's review, and that comScore expected to file the 10-K by March 15, 2016.

27.     On this news, shares of comScore fell $1.15 per share, or 2.8%, to close at $40.00 on March 1, 2016, on unusually heavy trading volume.

28.     On March 7, 2016, the Company filed an amendment to the Notice of Late Filing previously filed on February 29, 2016.  Therein, the Company disclosed that on March 5, 2016, the Audit Committee advised the Company's Board of Directors that it did not expect to finalize its review before March 15, 2016.  The Company also disclosed that, as a result, "the Company is not in a position to file its Form 10-K until after the Audit Committee completes its review and the Company's independent public accountants assess the conclusions of the Audit Committee in connection with their audit of the Company's annual financial statements included in the Form 10-K."  The Company also stated that it does not expect to make further comment regarding the Audit Committee's review until its conclusion.  Finally, in a press release issued the same day, the Company announced that "out of an abundance of caution" it was suspending the Company's previously announced share repurchase program."

29.     On this news, shares of comScore fell $13.67 per share, or 33.5%, to close at $27.04 on March 7, 2016, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased or otherwise acquired comScore's securities between May 5, 2015 and March 7, 2016, inclusive (the "Class Period") and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

31.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, comScore's securities were actively traded on the NASDAQ Stock Market (the "NASDAQ").  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Millions of comScore shares were traded publicly during the Class Period on the NASDAQ.  As of May 4, 2015, comScore had 40,483,660 shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by comScore or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

32.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

33.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

34.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of comScore; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

35.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

36.    The market for comScore's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, comScore's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired comScore's

securities relying upon the integrity of the market price of the Company's securities and market information relating to comScore, and have been damaged thereby.

37.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of comScore's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about comScore's business, operations, and prospects as alleged herein.

38.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about comScore's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## **LOSS CAUSATION**

39.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

40.    During the Class Period, Plaintiff and the Class purchased or otherwise acquired

comScore's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

41.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding comScore, his/her control over, and/or receipt and/or modification of comScore's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning comScore, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

42.     The market for comScore's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, comScore's securities traded at artificially inflated prices during the Class Period.  On August 17, 2015, the Company's stock closed at a Class Period high of $64.64 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of comScore's securities and market information relating to comScore, and have been damaged thereby.

43.     During the Class Period, the artificial inflation of comScore's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about comScore's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of comScore and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

44.     At all relevant times, the market for comScore's securities was an efficient market for the following reasons, among others:

(a)     comScore stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, comScore filed periodic public reports with the SEC and/or the NASDAQ;

(c)     comScore regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     comScore was followed by securities analysts employed by brokerage

firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

45.     As a result of the foregoing, the market for comScore's securities promptly digested current information regarding comScore from all publicly available sources and reflected such information in comScore's stock price. Under these circumstances, all purchasers of comScore's securities during the Class Period suffered similar injury through their purchase of comScore's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

46.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of comScore who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

47.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

48.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase or otherwise acquire comScore's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

49.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the acquirers of the Company's securities in an effort to maintain artificially high market prices for comScore's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

50.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about comScore's financial well-being and prospects, as specified herein.

51.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a

course of conduct as alleged herein in an effort to assure investors of comScore's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about comScore and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the acquirers of the Company's securities during the Class Period.

52.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

53.     The Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such

defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing comScore's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

54.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of comScore's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired comScore's securities during the Class Period at artificially high prices and were damaged thereby.

55.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that comScore was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their comScore securities,

or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

56.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

58.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.     The Individual Defendants acted as controlling persons of comScore within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

61.     As set forth above, comScore and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases and acquisitions of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 10, 2016                    **GLANCY PRONGAY & MURRAY LLP**


By:   _s/ Lesley F. Portnoy_
Lesley F. Portnoy (LP-1941)
122 East 42nd Street, Suite 2920
New York, New York 10168
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lportnoy@glancylaw.com

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
info@glancylaw.com

*Attorneys for Plaintiff Elliot Sommer*

## SWORN CERTIFICATION OF PLAINTIFF

## COMSCORE, INC. SECURITIES LITIGATION

I, Elliot Sommer, certify that:

1.　　I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.　　I did not purchase comScore, Inc., the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.　　I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.　　My transactions in comScore, Inc. during the Class Period set forth in the Complaint are as follows:

　　　　(See Attached Transactions)

5.　　I have not served as a representative party on behalf of a class under this title during the last three years, except for the following:

6.　　I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

3/8/2016
_____
Date

DocuSigned by:

*Elliot Sommer*
_____
04317E053FAF4DB...
Elliot Sommer

**Elliot Sommer's Transactions in**
**comScore, Inc. (SCOR)**

| Date | Transaction Type | Quantity |
|------|-----------------|----------|
| 2/1/2016 | Acquired* | 2,760 |

*Acquired as a result of the merger of comScore, Inc. and Rentrak Corporation, whereby each share of Rentrak Corporation common stock was converted into the right to receive 1.15 shares of comScore, Inc. common stock.