```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   ELLIOT SOMMER, et al.,

 4                  Plaintiffs,

 5           v.                              16 Civ. 1820 (JGK)

 6   comSCORE, INC., et al.,

 7                  Defendants.

 8   ------------------------------x
                                             New York, N.Y.
 9                                           October 27, 2016
                                             4:40 p.m.
10
     Before:
11
                         HON. JOHN G. KOELTL,
12
                                             District Judge
13
                             APPEARANCES
14
     BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
15        Attorneys for Lead Plaintiffs
     BY:  JAI K. CHANDRASEKHAR (by telephone)
16        JOHN C. BROWNE
          JESSE L. JENSEN
17
     KESSLER TOPAZ MELTZER & CHECK, LLP
18        Attorneys for Plaintiff William Huff
     BY:  SHARAN NIRMUL
19
     BLOCK & LEVITON LLP
20        Attorneys for Interested party Ira S. Nathan
     BY:  JASON M. LEVITON
21        JOEL A. FLEMING
          -and-
22   WOLF POPPER LLP
     BY:  CARL L. STINE
23        -and-
     ANDREWS & SPRINGER LLC
24   BY:  PETER B. ANDREWS

25
```

                          APPEARANCES (cont'd)

QUINN EMANUEL URQUHART & SULLIVAN
     Attorneys for Defendants comScore, Inc.; Serge Matta;
And Melvin Wesley III
BY:  STEPHEN A. SWEDLOW

PERKINS COIE LLP
     Attorneys for Defendant Rentrak Corporation
BY:  RONALD L. BERENSTAIN (by telephone)
     SEAN C. KNOWLES (by telephone)


ALSO PRESENT:  THOMAS CUSHING

 1          (Case called)

 2          MR. CHANDRASEKHAR:  Jai Chandrasekhar, Bernstein

 3   Litowitz Berger & Grossmann, for the lead plaintiffs in the

 4   federal action.

 5          THE COURT:  The connection is not very good.  We are

 6   getting static.

 7          MR. CHANDRASEKHAR:  Your Honor, would you like us to

 8   call back in?

 9          THE COURT:  Yes.  I think that's better.  If anyone is

10   on a speaker phone, they should pick up.  But when you speak,

11   there is static on the phone.  It's like it's being recorded.

12   It's not, though, is it?  Yes, no?  Is there no answer?

13          MR. CHANDRASEKHAR:  We are not recording.  I apologize

14   for the clicking.  We should call back in.  We will do that

15   right away.

16          THE COURT:  Thank you.

17          (Pause)

18          MR. BERENSTAIN:  Also on the line, your Honor, this is

19   Ron Berenstain and my colleague, Sean Knowles, from Perkins

20   Coie in Seattle, and we represent Rentrak Corporation and its

21   officers and directors who are defendants.  I can name them

22   all, if you wish.

23          THE COURT:  No.  That's ok.

24          Anyone else on the phone?

25          MR. BROWNE:  Good afternoon, your Honor, this is John

 1  Browne from Bernstein Litowitz, also on behalf of the

 2  securities plaintiffs.

 3          MR. NIRMUL:  Good afternoon, Sharan Nirmul from

 4  Kessler Topaz Meltzer & Check for the named plaintiff William

 5  Huff.

 6          MR. JENSEN:  Jessie Jensen, Bernstein Litowitz, for

 7  the plaintiffs.

 8          MR. LEVITON:  Thank you, your Honor.  Jason Leviton

 9  from the law firm Block & Leviton, on behalf of the state court

10  plaintiff, Mr. Ira S. Nathan.

11          MR. FLEMING:  Good afternoon, your Honor, Joel

12  Fleming, also of Block & Leviton on behalf of Mr. Nathan.

13          MR. STINE:  Good afternoon, your Honor, Carl Stine

14  with Wolf Popper, New York counsel for Mr. Nathan in the Oregon

15  actions.

16          MR. ANDREWS:  Good afternoon, your Honor, Peter

17  Andrews, Andrews & Springer, counsel for Ira Nathan in the

18  Oregon action.

19          THE COURT:  So many people representing Mr. Nathan.

20          MR. SWEDLOW:  Good afternoon, your Honor, Stephen

21  Swedlow of Quinn Emanuel on behalf of defendants comScore,

22  Inc., Serge Matta and Mel Wesley.  And with me is Tom Cushing,

23  deputy general counsel of comScore, Inc.

24          THE COURT:  Mr. Chandrasekhar, it sounds like we are

25  on the speaker phone.  I hear all sorts of things going on,

 1   like you're shuffling papers.  Please pick up.

 2          MR. CHANDRASEKHAR:  Yes.  I apologize, your Honor.

 3          THE COURT:  If you want to put us on mute, that's

 4   fine, but we really don't want to hear the paper shuffling.

 5          If any of the parties on the phone speak, please say

 6   who you are because we are in the courtroom and I have a court

 7   reporter.

 8          All of this began, so far as I can tell, with the

 9   motion by comScore to stay discovery in the Oregon actions.

10   ComScore was then joined by other defendants in the Oregon

11   actions and the parties have taken various positions.  I am

12   familiar with the papers.  I'll listen to argument briefly,

13   because I am familiar with the papers, and there are so many of

14   you.

15          Mr. Swedlow.

16          MR. SWEDLOW:  Thank you, your Honor.  Briefly, I just

17   want to identify what is the position of comScore and what is

18   not.

19          Under the Private Securities Litigation Reform Act

20   there is an automatic stay and under SLUSA there is a provision

21   for federal courts to stay state court actions.

22          The argument here is simply an analysis of those three

23   factors that the Court must consider, not --

24          THE COURT:  Why do you say the Court must consider?

25          MR. SWEDLOW:  The Court would consider in the context

1      of deciding whether to grant a stay.

2              THE COURT:  Hold on.  Why do you say that?  I realize

3      that some courts have looked to those factors, but it's not so

4      clear to me where they come from.  There is no Court of Appeals

5      decision that says, here are the factors to be considered.  I

6      looked at the statute.  The statute doesn't provide for those

7      factors.  The statute says I may do it as necessary in aid of

8      the Court's jurisdiction or to protect or effectuate its

9      judgments.  And I'm just not sure where courts have developed

10     those factors.

11             MR. SWEDLOW:  I agree with you that the Section 78 of

12     the statute does not say these are the three factors that you

13     must apply, so I withdraw the must part.  There are three

14     factors that have been considered by courts to determine

15     whether a stay in a state court action would be appropriate

16     because of the automatic stay in a federal action.  And I think

17     the reason those are the factors, but this is not -- I'm not

18     the Court of Appeals and I'm not telling you this is why you

19     have to consider those factors.  But the reason those factors

20     are relevant is that the point of the stay is to allow the

21     defendant, without having to go through the burden of

22     discovery, to make a motion to dismiss with the stay of

23     discovery.

24             THE COURT:  The problem with the way in which you

25     phrase that is, the purpose of the stay is to allow the

1    defendants to proceed with the motion to dismiss without having

2    to go through the burden of discovery.  That's in this case and

3    that's true.  There is a stay in this case so that the

4    defendants don't have to go through discovery in this case.  It

5    doesn't answer the question of whether if there are legitimate

6    reasons to go through discovery in another case, the defendants

7    don't have to go through discovery in another case.

8            Now, admittedly the other case can't be used as a way

9    to circumvent Congress' desire to have a stay of discovery in

10   this case, but then that requires some analysis of the

11   relationship between the other case and this case.

12           The Oregon plaintiffs say that in all of the cases you

13   cite, with one exception, where stays were granted the state

14   court actions were brought after the federal action, so there

15   is a whiff that the state court actions get brought as a means

16   of avoiding the stay of discovery in the federal action.  Maybe

17   it doesn't have to be proven that it's done for such a reason,

18   but that's a fact that that's what happens.

19           My first question is, is that right?

20           MR. SWEDLOW:  Is that right in terms of adding up the

21   case law?

22           THE COURT:  Yes.

23           MR. SWEDLOW:  Let me explain to you the timing of the

24   filings here because there is confusion about that.  ComScore

25   was not a party to the In Re Rentrak merger litigation until

 1    July of 2016 and the allegations in the original merger

 2    litigation had nothing to do with comScore's alleged financial

 3    misstatements.  That case was filed after the federal case was

 4    filed.  The other --

 5            THE COURT:  The first Oregon action was filed five

 6    months before the federal action.  Yes, comScore was brought in

 7    more recently.  But the action was there and has been

 8    proceeding and still has the same trial date in November of

 9    2017.  The fact that they added additional defendants doesn't

10    change that, right?

11            MR. SWEDLOW:  It hasn't changed it yet.  But the

12    motion to dismiss that was filed by comScore is still pending.

13            All I'm trying to clarify is that the claim against

14    comScore for aiding and abetting the disclosure of financial

15    statements in the context of the merger, that claim was filed

16    against comScore in the case that already existed and comScore

17    was added in July.  The motion for leave to add comScore as a

18    defendant was after these federal cases were filed.

19            Similarly, the other Section 11 case that is now filed

20    in Oregon state court was filed in October of 2016, after the

21    hearing on the motion to dismiss in the Oregon case.

22            THE COURT:  Is it true that the second Oregon case

23    can't be removed to federal court?

24            MR. SWEDLOW:  No, it's not true.  But I don't know

25    that we should debate that here because the view of the Oregon

 1    state court plaintiffs will be different than the view of the

 2    defendants on the removability of that case.

 3              THE COURT:  What's the time to remove it, if it could

 4    be removed?

 5              MR. SWEDLOW:  Depending on which acceptance of

 6    service, it would either be November 6 or November 11 because

 7    depending on who is removing, if the defendant who is served

 8    has 30 days until November 11 and the others consent, then it

 9    would be November 11.  But the earliest possible would be

10    November 6.

11              THE COURT:  Do one or more defendants intend to remove

12    the second case?

13              MR. SWEDLOW:  I don't know.  I'm in federal court and

14    you are asking me that question, but I think that decision has

15    not yet been made.  It's certainly being contemplated.

16              THE COURT:  You don't have to disclose defense

17    strategy.  I agree with you, it's not directly relevant to the

18    answer to whether there should be a stay.

19              What's the argument that it's not removable?

20              MR. SWEDLOW:  I think that would be their argument,

21    that it's not removable.

22              THE COURT:  I know.  You have no idea?

23              MR. SWEDLOW:  I do know why it would not be removable.

24    There is concurrent jurisdiction for Section 11 and '33 Act

25    claims and the question will be whether the removability of a

1  class action like the one that is filed is removable or isn't

2  removable, and it's a pretty complicated decisional law

3  analysis, and so somebody may seek briefing on that at some

4  point.

5      THE COURT:  So complicated it would be too difficult

6  to explain to me at this point.

7      MR. SWEDLOW:  No, not too complicated.

8      THE COURT:  That's ok.

9      MR. SWEDLOW:  I don't want to have a transcript of

10  what I may argue later on behalf of clients who have not

11  decided whether they want to argue that.

12      THE COURT:  That's a fair statement.  Go ahead.

13      MR. SWEDLOW:  I am going to characterize these three

14  factors quickly as factors courts have considered.  And what I

15  wanted to identify for the first factor, the risk of the

16  federal plaintiffs obtaining the state discovery.  It is not

17  that I believe these lawyers are incorrigible and can't be

18  told, don't share information.  They would not share

19  information if they are not supposed to share information.

20      The concern is that the Oregon state court action and

21  the documents produced in that action will not all be

22  designated confidential because they don't all satisfy the

23  requirements to be a confidential document, and the filings in

24  Oregon state court, at least according to the hearing I

25  attended with that judge, are public filings.

1          Similarly, the hearings --

2          THE COURT:  He was referring specifically to the

3     complaint, not to all the filings.

4          MR. SWEDLOW:  Judge Litzenberger was referring to the

5     filing of the complaint when she said filings are public.

6     Similarly, the hearing that's scheduled for class

7     certification, which would undoubtedly involve documents

8     obtained in discovery, is going to be a public hearing and

9     maybe before this Court rules on the motion to dismiss.

10         THE COURT:  Why should the appropriate date to be

11    looked at be the argument date on the class action motion

12    rather than the date that the plaintiffs have to file the

13    amended complaint in response to your inevitable first motion

14    to dismiss?

15         MR. SWEDLOW:  In this case, you mean?

16         THE COURT:  Yes.  Because the structure and purpose of

17    the PSLRA is to say to the plaintiffs, you have to come into

18    court with a plausible claim.  You can't give us whatever

19    complaint you want and say, discovery will establish a claim.

20    So give us your best complaint and be able to survive a motion

21    to dismiss.  We will have the plaintiff's best complaint on the

22    date that was specified in the scheduling order, which is mid

23    December, I think, for the plaintiff's amended consolidated

24    complaint, December 14, which is before there will ever be a

25    hearing on the class certification motion in Oregon.  The

1     plaintiff, without benefit of any discovery, will had to have

2     pleaded a viable complaint that survives a motion to dismiss in

3     this court on or before December 14, 2016, right?

4             MR. SWEDLOW:  Yes.  That's the scheduling order you

5     entered.

6             THE COURT:  Why would you look at what comes out at

7     the class action hearing later?

8             MR. SWEDLOW:  Two reasons.  One is that the automatic

9     stay applies during the pendency of any motion to dismiss.

10            THE COURT:  Sure.

11            MR. SWEDLOW:  Not up until.

12            THE COURT:  Yes, but so what.  The purpose behind the

13    stay is to force the plaintiffs to give a plausible complaint

14    that survives the motion to dismiss and, yes, discovery is

15    stayed until a decision on the motion to dismiss because if the

16    case is going to be dismissed, then there shouldn't be

17    discovery in the federal action, but that doesn't say that

18    there can't be discovery in the ongoing action in Oregon, which

19    is whatever I do on the motion to dismiss the federal action,

20    the action in Oregon goes on unless -- the actions in Oregon

21    unless the judge in Oregon decides to dismiss those actions,

22    right?

23            MR. SWEDLOW:  Correct.  But let me just make sure I'm

24    following the premise.  The premise would be that that's the

25    last best complaint that the federal plaintiffs can file and

1    then --

2              THE COURT:  Isn't it?

3              MR. SWEDLOW:  It may be.  That would be up to you.

4    Here is my concern with that structure and using that as the

5    critical date.  If discovery is produced in the Oregon action

6    and made public and the federal plaintiffs, as would be their

7    fiduciary obligation, obtained a publicly available information

8    in furtherance of their claim, then at that point that

9    information could and should appear in a reply on a motion to

10   dismiss and the argument would be made to you, we need to amend

11   our complaint to comport with the facts we now know from

12   discovery and it's the doing of a useless thing for you to

13   grant a motion to dismiss for us to just refile based on the

14   discovery that was now obtained by the state court plaintiffs.

15             THE COURT:  Isn't it a long way away from the notion

16   that the PSLRA is there as a shield to protect defendants from

17   implausible claims that can't even survive a motion to dismiss

18   and to save the defendants the cost and burden of discovery

19   from complaints that would otherwise be dismissed to take that

20   as sort of the template, if you will, for the PSLRA to say,

21   golly, in another legitimate case, which has been pending for

22   some time, some truthful evidence may come out and it may be

23   that the plaintiffs in this case soiled this case by attempting

24   to place before you, Judge, some truthful evidence that has

25   come out in this other litigation and you may decide that this

 1   case actually has merit.  You ought not to be doing that.

 2        You ought to close your eyes to the fact that this

 3   other stuff may come out and be placed before you.  Isn't that

 4   an odd structure?  Would it be any more palatable if the

 5   plaintiffs came in and said, Judge, wholly independent of the

 6   other litigation, the New York Times just ran an exposé from

 7   whatever sources and came up with all of this and we didn't

 8   know about this, but it supports the allegations in our

 9   complaint and the defendants say, do not look at that.

10   Truthful though it may be, you shouldn't look at that.

11        MR. SWEDLOW:  The defendants wouldn't say, either do

12   not look at that or truthful so it may be.  What the defendants

13   would say is that out of a group of let's say 10,000 e-mails an

14   individual has either sent or received, you are seeing one

15   e-mail in the string and now we are into a factual dispute

16   about what that supports and what it doesn't support and that

17   is inappropriate for motions to dismiss.

18        THE COURT:  That's why motions to dismiss get denied,

19   right, because there are factual disputes.

20        MR. SWEDLOW:  But the automatic stay in securities

21   cases is attempted at giving the defendants protection for

22   meritless claims, but also preventing the discovery from being

23   characterized in a way to support the opposition of a motion to

24   dismiss.  It's both purposes.  It's not simply to protect the

25   defendants from unnecessary discovery.

1          THE COURT:  You raise an interesting question about

2     other sources of information.  It's a good hypothetical.  Go

3     ahead.

4          MR. SWEDLOW:  The other point which we have blown past

5     and I'd like to just clarify for the Court is that the

6     plaintiffs in the Oregon case, as their claim is pending

7     against comScore, are part of this class.  They have not been

8     chosen as the lead plaintiffs in this case.  But the definition

9     of that class are the Rentrak shareholders who got comScore

10    stock and therefore are comScore shareholders for purposes of

11    this case.

12         When we are talking about the risk of the federal

13    plaintiffs obtaining discovery, this is a putative class, where

14    that putative class, which is a significant percentage of this

15    putative class, will undoubtedly -- their lawyers will get the

16    discovery.  It isn't like two separate entities or individuals

17    are suing comScore.  They are the same putative class, meaning,

18    one, the federal case includes all comScore shareholders.  The

19    other, Oregon case, includes many comScore shareholders who are

20    in the federal case.

21         So the risk of obtaining discovery for Mr. Nathan and

22    his putative class, it's the same.  It depend on whether you

23    define a putative class as only the lawyers for that individual

24    shareholder or whether you define them, as I believe you

25    should, as both putative classes, because that's who the

discovery is sought on behalf of.  When we are talking about a

risk and we say that the federal plaintiffs won't get it, the

federal plaintiffs include Mr. Nathan.  He's in the class.

The second point regarding the factual/legal overlap

is a factor that can be considered by courts, a factor I will

just discuss briefly with you.  The overlap of the claims

against comScore, they are the same factually, meaning the

claim is that comScore allegedly misstated its financials and

whether that was disclosed in a registration statement or in

the 10-Ks and 10-Qs, it's the exact same factual allegation.

So whether or not there was a misstatement is going to be the

subject matter of both litigations.

The overlap between comScore in those two cases is

complete.  I think you will hear some discussions about how the

Rentrak claims, which relate to a merger, that many of those

allegations comScore is not being accused of anything.  That's

a separate overlap question that I think Mr. Berenstain on the

phone will address.

The third factor is the burden on defendants.  In the

papers we disclosed, and I will represent to you here that the

internal investigation that started as a result of the letter

that the audit committee received, which is the financial

alleged misstatements investigation, has gathered 13 million

documents.  Not that 13 million documents will be produced in

response to the discovery from the Oregon state plaintiffs, but

1   that is the universe of information that exists relating to the

2   investigation.

3           The reason why that matters is one of the discovery

4   requests is all documents concerning the investigation, which

5   if I were the plaintiff I would also start there because why

6   reinvent the wheel.  What did the investigator find, the

7   internal investigation.  But that is a big burden.  Not

8   necessarily relating to the defendants, but there have been

9   subpoenas issued to nonparties or third parties who hadn't

10  touched the financial issues in any way, whether they advised

11  comScore or --

12          THE COURT:  Why is that argument not correctly

13  addressed to the judge in Oregon if the discovery is

14  burdensome?  Oregon has local discovery rules which are fairly

15  restricted.  Isn't Oregon one of the states that has fairly

16  restrictive rules, even stricter than Federal Rules of Civil

17  Procedure?

18          MR. SWEDLOW:  I think it depends on which discovery

19  rule.  If I can answer the first question, why isn't it

20  addressed by the Oregon court, it's because the burden standard

21  is not the same, whether a document is relevant and should be

22  produced and the burden for producing documents that are

23  relevant is what the Oregon court is going to consider.

24  Whether or not you accept the decisional development of these

25  factors, this third factor is not whether the discovery would

 1    be burdensome such that you wouldn't have to produce it.  It's

 2    whether producing the relevant discovery that you do have to

 3    produce would be burdensome.  And the reason why that factor is

 4    being considered is, if it's like a request for books and

 5    records, as it was in one case, that's not a big deal and it

 6    doesn't burden the defendant.

 7         THE COURT:  I would have thought that if it is

 8    discovery that otherwise has to be produced in the Oregon

 9    action, then it's no greater burden on the defendant because

10    they have to produce it in the Oregon action if it is

11    legitimately sought for use in the Oregon action and meets the

12    discovery rules in Oregon, and the motion to stay simply kicks

13    the can down the road until there is a decision on the motion

14    to dismiss the federal litigation before me, at which point the

15    Oregon litigation still goes on and all of the same information

16    will then be sought in Oregon and the Oregon judge will have to

17    decide whether she believes that that discovery is appropriate

18    in the Oregon action, exactly the same decision which the

19    Oregon judge would have to decide now if there is no stay,

20    right?

21         MR. SWEDLOW:  Correct.  What I'm saying is that the

22    burden analysis for this factor is not whether the discovery is

23    too burdensome to be produced.  It's whether producing what you

24    will have to produce is burdensome on the defendant.  It's a

25    different standard because if you don't have to produce it

 1   because it's too burdensome, you wouldn't have to produce it,

 2   period.  It's producing the discovery before the automatic stay

 3   is lifted.  So there will be burdensome discovery that we will

 4   have to produce if we don't win the motion to dismiss.

 5           THE COURT:  Why does that articulation of the factor

 6   make any sense at all?  Let's say it's a lot of discovery, but

 7   that's going to have to be produced anyway unless the Oregon

 8   judge says it doesn't fall within the discovery limits of the

 9   Oregon rules.  That's going to have to be produced.  The only

10   thing that happens is, the can gets kicked down the road, the

11   Oregon litigation is stopped until I decide the motion to

12   dismiss, which everyone knows is months and months down the

13   road.  So between the PSLRA and SLUSA, the federal statutes are

14   being used to stall what no one has said so far is not a

15   legitimate action in state court in Oregon.  I realize that

16   there is a motion to dismiss pending in Oregon.  And all of the

17   arguments can be made to the state court judge in Oregon that

18   discovery should not proceed until the judge decides the motion

19   to dismiss.  But that's very different from the entire Oregon

20   action effectively should be stayed because they can't get

21   discovery until I decide the motion to dismiss a wholly

22   separate case.

23           MR. SWEDLOW:  We may agree to disagree on this, but I

24   don't believe they are a wholly separate case because it's the

25   exact same factual allegations.

1          The only point I'm trying to make is that the

2    automatic stay alleviates the burden of actual discovery that

3    will be produced for a federal securities defendant, not that

4    it's too burdensome so it doesn't have to be produced.  And

5    extending that stay to state court actions gives the exact same

6    relief to the defendant, not that they can avoid the discovery.

7          And you are describing in kicking the can down the

8    road is what this automatic stay does, just like it does in the

9    federal case.  It kicks the can down the road until the federal

10   motion to dismiss is decided.  But the burden isn't, you won't

11   have to produce it ever.  It's that producing it during the

12   pendency of the automatic stay is a big deal, even if it's

13   relevant and producible.  That's the burden analysis.  And I

14   realize, we don't have to see it the same way.  I'm just

15   characterizing how courts have addressed it.  Thank you.

16          MR. SWEDLOW:  I am going to sit down now.

17          THE COURT:  Thank you.

18          Anyone else want to speak in favor of the stay?

19          MR. BERENSTAIN:  Ron Berenstain of behalf of the

20   Rentrak defendants.

21          When this motion to stay was filed by comScore, of

22   course, we were merely interested because we represent

23   defendants in the Oregon merger litigation.  But between the

24   time the motion was filed and now, of course, the plaintiffs in

25   this action filed the amended and consolidated complaint which

1   brings directly into this case a merger claim against Rentrak

2   Corporation and its officers and directors.

3         Indeed, your Honor, it is the same purported class of

4   former Rentrak shareholders who became comScore shareholders

5   against the same defendants, Rentrak and its officers and

6   directors, seeking exactly the same relief premised on exactly

7   the same factual theory that the proxy statements, the

8   legitimate proxy, joint proxy statement filed by comScore and

9   Rentrak, which contained financial statements, comScore

10  financial statements with the plaintiffs in both cases allege

11  are false somehow, that the Rentrak directors somehow are

12  responsible for those false financial statements based upon

13  this report that the Rentrak directors engaged a financial firm

14  to provide them in the course of the merger process.

15        In other words, the merger claim proceeding in Oregon,

16  which is a breach of fiduciary duty claim that has a disclosure

17  part of it, was taken wholesale and brought into this case.  So

18  we now have the identical case, different legal theories, but

19  the identical case in federal court now.  We have not even been

20  served yet.

21        We are appearing especially because we thought that

22  all the parties here or some of the parties here would think we

23  had notice of comScore's motion, that if we didn't speak up now

24  and ask to enjoin the stay that we might be precluded from

25  seeking to do so later.

1          THE COURT:  That's fine.  Welcome.

2          MR. BERENSTAIN:  What we have here, there really is no

3   question about overlap, your Honor.  Indeed, the plaintiffs

4   here in New York have just taken the case wholesale and brought

5   it into this case.  So there is exactly the same case, which we

6   are defending in Oregon.  We now have presented here.  And of

7   course under the PSLRA, as you just discussed with Mr. Swedlow,

8   the Rentrak defendants are entitled to an automatic stay and

9   until such time as the Court decides what to do in terms of

10  this case.  Until the Court decides our motion to dismiss the

11  case, the stay should apply to the claims against the Rentrak

12  directors proceeding in Oregon.

13         And the risk of spillover is rather obvious.  The

14  discussions of the claim and the basis for the claim were taken

15  directly by the lawyers in New York from the lawyers in Oregon.

16  We are not saying they are colluding and we don't have to

17  demonstrate they are colluding.  The fact is that it would

18  appear that they are competing rather than colluding, but that

19  isn't the point.

20         The point is that the plaintiff can't have their cake

21  and eat it too and basically that's the purpose of SLUSA, you

22  can't get the benefit of some discovery from a non-PSLRA case

23  and use it in a PSLRA case and that's exactly what we have

24  here.  We see it in the complaint.  It's already been filed in

25  this case and we assume that as discovery proceeds against the

 1    Rentrak defendants that it's proceeding immediately.

 2          We are producing documents tomorrow, starting a

 3    rolling production of more documents tomorrow.  We can only

 4    assume that the plaintiffs in this case in New York will bulk

 5    up on whatever information they can appropriately or

 6    inappropriately get their hands on to further the theory that

 7    they got from the Oregon litigation.  We have a direct overlap.

 8    We have a clear evidence of spillover and risk of more

 9    spillover and the burden issue.  And the burden issue, the

10    discovery that's being sought in Oregon is not de minimus.

11    That's not the point.  It's real discovery, obviously, a lot of

12    it.  There is no question that that is going on and that it

13    will find its way into this case.

14          Now, the Oregon plaintiffs will say the case in Oregon

15    has different issues in addition to the disclosure case which

16    these two cases share.  Yes, there are some other factual

17    theories.  But it's one merger case, your Honor.  It's the same

18    witnesses, the same meetings, the same transactions, the same

19    possible that they should have considered --

20          THE COURT:  Could I get a word in edgewise?

21          MR. BERENSTAIN:  It's impossible, your Honor, to

22    practically parse the discovery and say, well, you can't

23    proceed with discovery related to this exposure issue because

24    that's identical in both cases.  That is not only impractical,

25    but I think literally impossible.

1           The Rentrak defendants are entitled to the protection

2      of the discovery stay now --

3           THE COURT:  Yes.  And you will have it.  You will have

4      it.  You have a federal case in New York under the PSLRA and

5      there is a stay of the discovery in New York until there is a

6      decision on a motion to dismiss.  You have not yet appeared in

7      the New York action and no discovery is being sought from you

8      in the federal action in New York, in any event.

9           You have your action in Oregon in which you are a

10     defendant.  Had the action in New York never been filed against

11     you, you would have been required to produce whatever discovery

12     you were required to produce in Oregon, right?

13          MR. BERENSTAIN:  Yes.  It expired.

14          THE COURT:  October 2, right.

15          MR. BERENSTAIN:  Yes, your Honor.

16          THE COURT:  It's no more.

17          What would the result be if you didn't argue out

18     effectively an effort to stay the Oregon actions by preventing

19     any discovery going forward in Oregon but simply came in with a

20     motion, either to this court or to the Oregon court, and said,

21     stay one of these actions because they are so similar.  Either

22     stay the action in New York or stay the action in Oregon.  What

23     would the result be?  Do you want to speculate?

24          MR. BERENSTAIN:  That's exactly what we are

25     contemplating right now, your Honor.

1          THE COURT:  No.  Hold on, please.  Both of us can't

2      talk at the same time.  And when you are talking, the way the

3      phone system works, you can't hear what I'm saying because the

4      phone just cuts off.  I know you are not doing it deliberately,

5      but pause every now and then.

6          The motion before me is a motion to stay discovery in

7      the Oregon actions.  It's not a motion to stay the action,

8      either in Oregon or to stay the action in New York.  It's to

9      stay discovery.

10         Now, the effect of a motion to stay discovery is in

11     fact simply to stall the Oregon actions, which have been

12     pending for over a year.  The first Oregon action has been

13     pending for over a year.  So rather than a straightforward

14     motion which attempts to argue two actions pending, first

15     action should proceed, you bring a motion, you join a motion

16     which simply says, strangle the action in Oregon by preventing

17     any discovery in that action.

18         I understand what the motion is.  I understand what

19     the effect is.  And my question is a substantive question.

20     What would happen if you or any of your colleagues made a

21     motion that said, we have two actions pending, one in state

22     court, one in federal court?  We shouldn't have to defend two

23     actions.  I would have thought that usually both actions go

24     forward.  Isn't that right?  But you say no.  We shouldn't have

25     to be defending both actions, so strangle the Oregon action.

1    If you made a straightforward motion to ask for that relief,

2    that would traditionally be denied, wouldn't it?  Federal

3    actions can proceed in the same way that state court actions

4    can proceed.  Both courts have an obligation to exercise their

5    jurisdiction.

6            That motion is not before me.  It hasn't been briefed.

7    But what you are arguing is, we shouldn't have to defend in

8    both places.  If that's right, make the motion.  But it's not

9    clear to me why the way to accomplish that end is by simply

10   saying, strangle the Oregon action by preventing any discovery

11   in Oregon.  That seems to me a little circuitous, which is a

12   nice way of putting it.  No, yes?

13           MR. BERENSTAIN:  I want to make sure you are finished,

14   your Honor.

15           The fact is that, of course, as you know, we just

16   received notice of this case.  We are thinking about our

17   response to this complaint, which will bring on some kind of

18   motion which could be a motion to dismiss on the merits or a

19   motion to stay or those motions in the alternative.  And, yes,

20   your Honor is correct.  We don't believe that either of the

21   cases have any legal merit and we certainly don't believe our

22   clients should be the party to two identical claims in two

23   different courts.

24           But the public policy of the PSLRA and SLUSA together

25   is that these plaintiffs, the same class that's already sued us

in Oregon, purported class, has chosen now to bring a federal

case governed by the PSLRA in federal court, that these

defendants that we represent are entitled to the benefit of the

automatic stay until such time as this court, in response to

whatever motions we bring, deals with it.  And these plaintiffs

are not entitled to use the discovery and the public

information -- they are not entitled to the benefit of the

discovery from the Oregon litigation which they have copied and

are pursuing in this court.

        So it is not a tactic on the part of the Rentrak

defendants in any way.  We certainly didn't ask to be sued in

either place.  It's a tactic on the part of the class and its

representatives who have chosen this course and are trying to

use the Oregon litigation in order to further their efforts in

New York, and we will appropriately respond to the motion in

New York and attempt to have this case dismissed just like we

have the one in Oregon or at least end up litigating in one

place or the other.

        THE COURT:  Let me ask you in another way.  Are the

discovery rules in Oregon more restrictive than the federal

rules?

        MR. BERENSTAIN:  No, your Honor.  It's actually the

opposite.  They are more restrictive with respect to experts.

With respect to experts, there really is no discovery.  With

respect to fact discovery, they are much more liberal than the

1    federal rules are or in fact many, many states.  And you can

2    take as many depositions as you wish and depositions can go on

3    day after day so that the typical restrictions in the federal

4    rules adopted by many states are not in the rules in Oregon.

5            THE COURT:  Does Oregon have a broader initial

6    disclosure requirement than the federal rules?

7            MR. BERENSTAIN:  There is no initial disclosure

8    requirement in --

9            THE COURT:  What is the scope of discovery in Oregon?

10           MR. BERENSTAIN:  In this case, your Honor?

11           THE COURT:  No.  Just the way it's phrased in Oregon,

12   in your rules.

13           MR. BERENSTAIN:  The scope of discovery is similar to

14   the federal rules.

15           THE COURT:  Anyone else on behalf of the stay?

16           MR. SWEDLOW:  Can I respond to a question that you

17   asked Rentrak?

18           THE COURT:  Sure.

19           MR. SWEDLOW:  You asked why not make a straightforward

20   motion to stop or strangle or stay one of these cases rather

21   than using the policy PSLRA/SLUSA automatic stay of discovery.

22           For full disclosure, there are two bases for the

23   pending motion to dismiss in the Oregon *In Re Rentrak* case

24   filed by comScore.  One is that the aiding and abetting claim

25   has not been sufficiently alleged.  It's just a different claim

1    than the federal securities claim because comScore has to have

2    participated in some breach of fiduciary duty separate.

3            The other is, under Oregon rules, if there is the same

4    action filed by the same parties earlier than the Oregon state

5    court can, not must, but can dismiss the action rather than

6    stay it.  Strategically, for full disclosure, we would rather

7    that comScore be dismissed from the Oregon action under that

8    Oregon rule than the Oregon case be stayed, so we made the

9    motion to dismiss.

10           The problem with staying, and you will probably hear

11   from the federal plaintiffs on this issue, staying the federal

12   case as it relates to comScore is that the class that includes

13   the Oregon state plaintiffs, the federal class is bigger.  It's

14   all comScore shareholders as opposed to just the comScore

15   shareholders who got comScore stock from the merger.  So the

16   argument would be, while the federal case --

17           THE COURT:  The legacy Rentrak.

18           MR. SWEDLOW:  Yes.  Legacy Rentrak.  The people who

19   got shares as a result of the merger or acquisition got those

20   shares, that's a subclass, not defined by you, but it is a

21   smaller group than the federal plaintiffs which represent a

22   class of everybody who has comScore shares who are allegedly

23   injured by the wrongdoer.

24           THE COURT:  Anyone else in support of the stay?  Who

25   wants to speak against the stay?

 1          MR. FLEMING:  Very briefly, Joel Fleming for

 2   Mr. Nathan.  The remedy that the defendants are seeking is an

 3   extraordinary one.  It's an extraordinary one because it's

 4   being sought from this court.  As we have already discussed,

 5   the less extra remedy is to go and ask for this relief from the

 6   Oregon court.  There is the motion to dismiss that comScore has

 7   filed on the basis of the federal action.

 8          The Rentrak defendants, including Rentrak Corporation,

 9   the wholly-owned subsidiary of comScore, filed a motion to

10   extend.  The Oregon court had put in place a brief discovery

11   stay during the pendency of the motions to dismiss that ran

12   from June 3 to October 1.

13          After hearing six hours of argument on the motion to

14   dismiss and then 10 minutes of argument on the motion to stay

15   at the end, the Oregon court let the stay expire on time and

16   went forward.

17          This is an issue that the Oregon court has considered.

18   It would be an extraordinary remedy for this court to do it.

19   An extraordinary remedy requires extraordinary facts.  We have

20   heard some factors that some courts have considered, but

21   looking at the text of the statute and what Congress intended,

22   Congress borrowed the language of the antiinjunction act, which

23   is pretty narrow, either to protect or effectuate a judgment or

24   necessary in aid of the Court's jurisdiction.

25          Essentially, it comes down to circumvention, either a

1    strong form where you have lawyers in the federal case using

2    the state courts as a vehicle for improper discovery, or the

3    weaker forum, kind of referred to as sort of a whiff of

4    impropriety where a federal case is filed first, there is

5    already a stay, and then someone files in state court to try to

6    get around that.  Obviously, neither of those are present here.

7    Our view is for those reasons it doesn't satisfy the test of

8    the statute.

9         THE COURT:  Do you know what the schedule is for a

10   decision on the motion to dismiss?

11        MR. FLEMING:  Yes, your Honor.  It was initially

12   anticipated -- we filed our motion to amend in early April.  We

13   had a hearing in June.  The Court initially thought that we

14   were going to be able to get the complaint on file earlier.  It

15   took longer to get the second amended complaint on file than

16   was originally anticipated because we were working through

17   confidentiality issues.  She anticipated hearing argument on

18   the motion to dismiss at the end of August and issuing a

19   decision prior to the expiration of a stay.  She thought it

20   would take her about a month.  At the hearing on September 28,

21   she said that and said, I scheduled it for the end of August

22   because my September was less busy than my later months.  So a

23   month or longer would be my estimate if October is a busier

24   month for the Oregon court.

25        THE COURT:  Do I understand from your papers that you

 1    are perfectly comfortable saying that any discovery that's

 2    produced in Oregon which is relevant to the federal action will

 3    be marked as confidential?

 4            MR. FLEMING:  It's defendants who would designate it

 5    as confidential.  And this is the first --

 6            THE COURT:  That was your suggestion.

 7            MR. FLEMING:  I agree.  And we have no objection.  We

 8    have no objection to them making that designation.  If they

 9    think in good faith that there is some document relevant to

10    this action that they couldn't mark as confidential, we would

11    happily amend the protective order to say that.

12            The last point I would make, unless your Honor has any

13    other questions, goes to this issue.  It goes to the question

14    of what would be in our class certification motion.  Because

15    it's a breach of fiduciary duty claim and not a federal

16    securities claim, our class certification motion is not going

17    to include event studies, it's not going to include much on the

18    merits at all.  Usually, on a class certification motion in

19    merger litigation the class certification issues deal with

20    primarily the adequacy of the lead plaintiff.  There may be

21    confidential financial documents related to our client.  As I

22    stand here today, I can't imagine what additional confidential

23    information we would put in our class certification motion or

24    argue at the class certification hearing.

25            Unless your Honor has other questions, we would rest

 1   on our papers.

 2           THE COURT:  No.  Thank you.

 3           Anyone else?

 4           Yes.

 5           MR. SWEDLOW:  The Oregon state court rules, as the

 6   federal rules, don't allow a party, which would be comScore, in

 7   good faith to designate it as confidential, information that

 8   doesn't rise to the level of requiring the confidentiality

 9   designation.  So we can't simply designate everything that's

10   produced that's related to the federal case as confidential

11   because that's not allowed.  We can't simply have a private

12   court system for a purpose when it's not allowed by the Oregon

13   court system and it isn't allowed by the federal court system.

14           THE COURT:  The representation in the papers is that

15   so far all of the documents that have been produced have been

16   marked as confidential.

17           MR. SWEDLOW:  Right.  I didn't do that.

18           THE COURT:  Because in good faith you have

19   concluded --

20           MR. SWEDLOW:  No.  I have not made any good-faith or

21   bad-faith determinations.

22           THE COURT:  Whoever it was on behalf of your client

23   made --

24           MR. SWEDLOW:  Also not correct.  ComScore hasn't

25   produced a single document in the case.  Rentrak has.  They are

1    not comScore documents.  They have not designated or not

2    designated anything.  I don't feel comfortable, which is why

3    I'm saying it here, blanketly designating the entire production

4    as confidential because it's relevant to the federal case,

5    simply because the federal plaintiffs might otherwise get it.

6    That's not allowed.  So I plead to the court to not make me

7    designate something that doesn't satisfy confidentiality under

8    Oregon rules so that the federal plaintiffs don't get it.

9            THE COURT:  That's fine.  I wouldn't want you to do

10   anything that you think was not correct.  The representation

11   was that all of the documents that Rentrak produced so far and

12   Rentrak has now been folded into comScore have been marked as

13   confidential.  Now, perhaps the universe of Rentrak documents

14   are much more confidential than the universe of comScore

15   documents and comScore is going to be far more selective in

16   what it designates as confidential.  We shall see.

17           I had always thought that part of the -- and the

18   Supreme Court has spoken to this -- part of the purpose of a

19   confidentiality order was to promote the expeditious production

20   of documents and the purpose of Rule 502 is to accomplish the

21   same thing with respect to privilege.

22           Now, maybe in its production, if it goes forward,

23   comScore will be taking a far more restrictive approach to the

24   production of documents that it makes.  I don't have to decide

25   those questions now.

1            MR. BERENSTAIN:  Your Honor, may I be heard on that

2    issue?

3            THE COURT:  Sure.

4            MR. BERENSTAIN:  Rentrak had designated documents as

5    confidential that we have produced.  It is also the case, your

6    Honor, that the plaintiffs' position, which has been stated in

7    writing to us, is that all of the documents we have produced

8    are not confidential, according to the plaintiff's view, and

9    that they have demanded that we designate all of the documents.

10   In fact, they take a position in writing that not only all the

11   documents that we have produced should not be treated as

12   confidential and that if we refuse to de-designate they will

13   seek that from the Court, but that all the documents that we

14   are going to produce they have already taken the position that

15   none of those is confidential either.

16           THE COURT:  Sight unseen.

17           MR. BERENSTAIN:  That's a dispute we understand we

18   will have to deal with in an Oregon court.

19           But to the extent the plaintiff is now representing,

20   the plaintiff's counsel in the Oregon litigation is now

21   representing that they are perfectly fine with everything being

22   produced as confidential as a way to shield information from

23   the New York litigation, that is clearly an inconsistent

24   position to what they have taken.

25           THE COURT:  As a result of their protest that your

1    documents were incorrectly labeled as confidential, have you

2    taken the confidentiality designation off any of those

3    documents?

4              MR. BERENSTAIN:  Not yet, your Honor, but we have

5    committed to provide them our position on that I think in the

6    next day or two.  I can't remember what day.  We are reviewing

7    them and we intend to respond, based upon an agreement we

8    reached with them.

9              THE COURT:  Ok.  Thank you.

10             I scheduled expedited briefing on the motion because I

11   know that the parties want an answer quickly, and so I'm

12   prepared to decide the motion now.

13             The Private Securities Litigation Reform Act ("PSLRA")

14   provides that, in any federal securities action, "all discovery

15   in other proceedings shall be stayed during the pendency of any

16   motion to dismiss unless the Court finds upon the motion of any

17   party that particularized discovery is necessary to preserve

18   evidence or to prevent undue prejudice to that party."  15

19   U.S.C. Section 78u-4(b)(3)(D).  The PSLRA is geared toward

20   protecting defendants from abusive litigation tactics and

21   strike suits.  The automatic discovery stay affects that goal

22   by precluding discovery until a motion to dismiss is denied and

23   the case can proceed forward.  Aware that creative plaintiffs

24   could circumvent the automatic discovery stay, Congress enacted

25   the Securities Litigation Uniform Standards Act ("SLUSA"),

1    which provides that, "Upon a proper showing, a court may stay

2    discovery proceedings in any private action in a state court,

3    as necessary in aid of its jurisdiction, or to protect or

4    effectuate its judgments, in an action subject to a stay of

5    discovery pursuant to this paragraph."  15 U.S.C. Section

6    78u-4(b)(3)(D); *see also In re DPL, Inc., sec. litig.*, 247

7    F.Supp.2d 946, 947 (S.D. Ohio 2003)(quoting H.R. Rep. No.

8    105-640 at 17-18).

9           The federal defendants in this case have asked this

10   Court, pursuant to SLUSA, to stay two somewhat parallel

11   purported class action proceedings in Oregon state court filed

12   by nonparty Ira S. Nathan, the trustee for the Ira S. Nathan

13   Revocable Trust (the "Oregon state plaintiff").

14          The first Oregon litigation, *In re Rentrak Corporation*

15   *Shareholders Litig.*, No. 15 Civ. 27429 (Multnomah County

16   Circuit Court, Oregon), was filed in October 2015, over one

17   year ago and five months prior to the filing of this federal

18   action.  The first Oregon action asserts claims against certain

19   of the federal defendants, including Rentrak and more recently

20   comScore, related to alleged breaches of fiduciary duty or

21   aiding and abetting breaches of fiduciary duties.  The second

22   litigation, *Nathan V. Matta*, et al., No. 16 Civ. 32458,

23   Multnomah County Circuit Court, Oregon), is a follow-on to the

24   first litigation commenced by the same Oregon state plaintiff

25   earlier this month, on October 3, 2016.  The second Oregon

action brings Securities Act Section 11 claims against certain

of the federal defendants, including members of comScore's

board of directors and comScore's executive officers.

The second ground for staying a state court action

under SLUSA -- "to effectuate the Court's judgments" -- is not

implicated because there has been no judgment at this point.

Accordingly, under the statute, the only possible ground for

the discretionary stay is to stay the proceedings in aid of the

Court's jurisdiction.  Because the federal defendants have not

met their burden of demonstrating that a discovery stay is

necessary in aid of the Court's jurisdiction, their request is

denied.

The purpose of the automatic discovery stay under the

PSLRA is to ensure that unwarranted discovery does not make it

into the hands of federal plaintiffs.  The plaintiffs are

required to state a plausible claim without subjecting the

defendants to burdensome discovery and, therefore, discovery is

stayed pending the decision on the motion to dismiss.

In this case there is little reason for concern that

such discovery will leak out of the Oregon litigations for use

in the federal litigation.  There is a protective order in the

first Oregon action and the papers can be filed in the state

court under seal to the extent that they contain confidential

information.

While there is no such protective order in the second

Oregon action, that action is still in its infancy and the

counsel for the Oregon state plaintiff has indicated the

receptiveness to entering into a confidentiality order or

extending the confidentiality order.

Moreover, the scheduling order in this case provides

that any amended complaint that responds to the motion to

dismiss will be filed by December 14, 2016.  The federal

defendants point to a number of cases in which federal courts

have stayed state cases under SLUSA, but in almost all of those

cases the plaintiffs were attempting to circumvent the PSLRA's

federal discovery stay through state discovery mechanisms or

there was a real risk that the stay would be actually

circumvented.

By contrast, the Oregon state actions are plainly not

designed to circumvent the discovery stay, nor are they likely

to circumvent the stay.  The first Oregon action preceded the

federal action by many months, while the second action is a

clear outgrowth of the first.

The counsel representing the respective plaintiffs in

the state and federal actions are different and it's plain that

the counsel for the plaintiffs in the state and federal actions

are at some odds in pursuing the two litigations.

Illustratively, when counsel for the federal plaintiffs asked

counsel for the Oregon plaintiff whether certain discovery was

public, the counsel for the Oregon plaintiff's response was to

refuse the request and to immediately alert the federal
defendants about the request.

          The federal defendants, nonetheless, raise concerns
that discovery could leak out from the Oregon actions through
public proceedings and filings, but these concerns are
speculative and there is a protective order in the first Oregon
action which protects confidential information.

          From a practical and logistical standpoint, it is
unlikely that state discovery could be used in the federal
litigation in time for the federal plaintiffs to bolster their
allegations in the amended complaint such that the discovery
could be used as a means to avoid an otherwise meritorious
motion to dismiss.  The relevant inquiry is not whether the
discovery reaches the federal plaintiffs prior to the Court's
decision on a Rule 12(b)(6) motion.  Rather, it is whether the
discovery reaches the federal plaintiffs in time for them to
buttress their amended complaint in such a way as to defeat a
motion to dismiss.

          All of those arguments are speculative.

          The second Oregon action is in its initial stages and,
realistically, discovery cannot occur until after this date
when an amended complaint will be filed in this federal action.

          The Court's analysis has focused on the possibility
that unwarranted discovery from the Oregon state proceedings
could reach the federal plaintiffs and undermine the purposes

1   for a stay of discovery under the PSLRA.  Given the purpose and

2   language of the PSLRA and SLUSA, any interplay of those

3   statutes, that is the proper inquiry.  Indeed, SLUSA states

4   that a stay should issue only as necessary to aid the Court's

5   jurisdiction.  15 U.S.C. Section 78u-4(b)(3)(D).  Section

6   78u-4(b)(3)(D) of SLUSA, read liberally and in light of the

7   congressional purpose behind the statute, should effectuate the

8   goal of the PSLRA's discovery stay to avoid abuse of litigation

9   tactics by plaintiffs at the federal level.  Other courts in

10  this district have likewise focused on that inquiry in

11  determining whether a stay should issue.  *See, e.g.*, *In re*

12  *First Bancorp Derivative Litig.*, 407 F.Supp.2d 585, 586

13  (S.D.N.Y. 2006) ("While the case law on the interplay between

14  the PSLRA automatic stay and discovery in state law derivative

15  actions is less than perfectly consistent, on the whole,

16  federal courts have refused to stay discovery in derivative

17  actions brought independently of parallel securities fraud

18  class actions.");  *In re Adelphia Commc'ns Corp. Sec. &*

19  *Derivative Litig.*, No. 03 MDL 1529 LMM 2004 WL 22052586, at *1,

20  (S.D.N.Y. Sept. 28, 2004) focusing on the statutory language of

21  SLUSA.  In this case, a discovery stay is not necessary to aid

22  the Court's jurisdiction over the federal action, and discovery

23  in the Oregon actions will not undermine the purpose of the

24  PSLRA's discovery stay.

25          The federal defendants urge the Court to follow a

three-factor test that some courts have used to determine

whether a stay should issue:  (1) the risk of federal

plaintiffs obtaining the state plaintiff's discovery; (2) the

extent of factual and legal overlap between the state and

federal actions; and (3) the burden of state court discovery on

defendants. *See Good v. De Lange*, No. 11 Civ. 2826, 2011 WL

6888649, at *2 (S.D. Cal. Dec. 29, 2011).  Applying that test,

the federal plaintiffs have still not met their burden of

demonstrating that a stay should issue for substantially the

same reasons discussed above.

          The first two factors of this test are geared toward

the inquiry already performed:  Assessing whether federal

plaintiffs will gain access to unwarranted discovery through

abusive litigation tactics at the state level.

          As to the first factor, as noted, there is little risk

that the federal plaintiffs in this case will obtain the Oregon

state plaintiff's discovery.

          The second factor plainly operates in aid of the first

factor.  The second factor is a shorthand way of determining

the relevance of any state discovery that could reach federal

plaintiffs.  The greater degree of overlap, the greater the

relevance, the greater the concern that state discovery could

compromise the PSLRA's discovery stay.  However, if there is

minimal risk that state discovery could leak out in the first

place, then the degree of overlap becomes gratuitous to the

1    ultimate inquiry.  Namely, will federal securities plaintiffs

2    be able to bolster their allegations with state discovery.  As

3    already explained, that is not the case here.

4          Finally, while many courts assess the burden of the

5    state discovery on the defendants, that argument is better

6    directed to the state court.  This is not a case where the

7    defendants are forced to undergo burdensome discovery in aid of

8    the federal actions which may be dismissed.  Rather, the

9    discovery is being sought in aid of a state court action which

10   is set for trial in November 2017.  If that discovery is overly

11   burdensome for that trial, the defendant should raise that

12   issue with the state court in Oregon.

13         The Court has considered all of the arguments raised

14   by the parties.  To the extent not specifically addressed, the

15   arguments are either moot or without merit.  For the foregoing

16   reasons, the federal defendants' motion to stay the Oregon

17   state actions is denied.  The clerk is directed to close docket

18   numbers 52, 55, 86, and 111.  So ordered.

19         I appreciated the arguments.  I appreciated the

20   briefs.  I look forward to seeing you on the next matter.

21         Thank you, all.

22                               o0o

23

24

25